Good morning. My name is Shelly Smith and I represent the appellants. This is a consolidated case, so I represent actually four taxpayers, four real estate companies. I would like to reserve approximately five minutes for rebuttal, if I could. So to start with, I would like to say that this is a case of first impression, that there are no Illinois decisions deciding the precise issue here, which is whether or not the enterprise zone exception to the City of Chicago's transfer tax applies to the renting out of affordable housing under a federally funded program, in this case, Section 8. The test is whether or not the taxpayer has purchased the property to use primarily for commercial or industrial purposes. Now, the only cases that there are out there, West Belmont and Metro developers deal with a different type of activity and we submit are helpful in interpreting the exception. You weren't selling any goods, were you? We were not selling goods. You weren't selling any services, were you? We were not, no. You weren't providing goods and services to anyone? We were providing services under the otherwise provided provision of the Revenue Ruling Number 2. That is our provision. So you were otherwise providing goods and services, including any real estate used for hotel or motel purposes. I'm going to allow us to understand what goods you were providing. Just as a motel provides no goods other than the services of... I'll get to that in a minute. Sure. You weren't providing any goods to anyone. You didn't sell any... you didn't give me apples, oranges, towels... No goods. No goods. That's correct. And the service that you were providing was what? You were renting them residential real estate? No. It's undisputed that we were also providing services that are not provided in any other type of real estate and those services are very vital to the purposes of... What in terms of... well, I'll go to the decision of the judge. Why don't you just tell me what your contention is? Sure. Well, it's undisputed facts. There are English classes, there are job readiness programs, there are computer classes, there are literacy classes, there are all kinds of programs that are provided as part of rents. You're renting residential real estate and you're providing some English classes and some other classes on the premises, right? That's correct. Is it your contention that more than 50% of the property was used for that purpose? Of the service? No. However... Well, that's what the statute says. I don't believe that is what the statute says. The word residential is no longer in the statute. For property commonly used for commercial or industrial purposes, more than 50% of the property must be used for either commercial or industrial purposes. That is not the statute with all due respect. That is... It's only Section 3-33-06-OL in the municipal code. The section that says that it has to be 50% is Section 7 of the Revenue Tax Ruling. Yeah, okay. It is not the actual statute. So in other words, you disagree with the ruling? I do disagree with the ruling, absolutely. Okay. And what's your basis for disagreeing with the ruling? The disagreement is that there is a phrase in the ruling in Section 5 that says that it includes not only providing goods and services in terms of selling and buying them, but also providing, otherwise providing, that is not buying or selling goods or services, including any real estate used for hotel or motel purposes. Does it say for otherwise providing goods and services, common including any real estate used for hotel and motel purposes? Is that what the tax rate for rulings says in Paragraph 5? Yes. Okay. So we're not giving away any goods. You're providing some form of services, but you admit that it doesn't equal 50% or more of the use of the property. And you say including real estate used for hotel and motel purposes. Is there any difference between the occupation of real property for residential apartment purposes and the occupation of real property as occupants of motel or hotel properties? In terms of this phrase, motels especially do not provide services. They don't sell goods and they don't sell services. They provide for a rent. They let out rooms for a specific period of time. That use is the same use as residential in the sense that on the side of the, from the perspective rather, of the taxpayer and the taxpayer's intent, the intent is the same, to run a commercial enterprise either by renting rooms for a temporary purpose in the motel where you don't provide, you don't sell goods or services. People go there to stay there. And our interpretation is an interpretation which includes the plain ordinary dictionary definition of commercial. That has been defined in several Federal cases under the Commerce Clause to absolutely include rental properties that are rented out as a commercial endeavor. That's the only other citation you have, Your Honors, to an interpretation of what commercial means. What they want you to look at, all of a sudden in a total 180 on appeal, is that all of a sudden West Belmont is not dispositive at all. It hardly, it hardly matters in this case. They want you to look instead at a tax that has an exception. This is a property tax for charitable uses, for religious uses, and for educational uses, and so that all of a sudden the intent of the lessee is what matters. Well, all of those cases are completely distinguishable because that statute has a specific provision and it says that the taxpayer may not get the exception if they lease the property out for profit. That's specifically in there. That's nowhere in the exception that we're talking about here. And my contention and our contention is if the taxpayer's purpose serves the purposes stated in the Enterprise Zone Act, which is the only place there's a purpose statement, as well as the purposes. Would you concede under your definition that any use of property other than for personal uses and for which you received payment is commercial? I would not. Why not? And that's because of what I just said. The definition and the way that it's been approached in West Belmont is to take first the dictionary definition. And in West Belmont, the Court said the only dictionary definition that really works here that's broad enough to include the uses is basically the exchange of property of any kind for profit. Well, that's what's happening here. There's a property right that's being exchanged for profit. How does that differ from the definition I just gave? If you give me just one minute, I will explain, Your Honor. That's the first test. But in West Belmont, they didn't stop there. They said that's not enough. We're not going to stop with just the dictionary definition in the plain meaning. They said we're going to look at the purposes, economic development. Well, what's economic development? Having an enterprise zone that all of a sudden has movie theaters, has shopping centers, has banks, has doctor and dentist offices, has all these types of shops and businesses. But what do they need? They critically need a customer base. What do you not have in enterprise zones? Enterprise zones are defined as places where the residents are primarily low income, unemployed, or moderate income. And what we have here is a use that's not only within the commercial, the plain meaning of commercial, and also as it's been defined on the Commerce Clause, but also one that serves the purposes. Now, there are many uses that they give this exception to, but you scratch your head to think how does it possibly serve the purposes of the statute? It doesn't at all. All it does is enrich an investor who does not live in the enterprise property. What we're talking about here is giving support. And the reason we contend that that is so intertwined with the purposes of the Enterprise Act, that is having a customer base that pays under the federal statute under only 30% of their income for housing, leaving 70% for other purposes, like patronizing businesses in the enterprise zone. That's the only way that those types of residents can get in. When you talk about benefiting the enterprise zone, one could argue that hotels and motels benefit a commercial zone because they have a tremendous influx of You rent a motel for three days a week, one night, or whatever. But in your case, these are permanent residents. There isn't a great influx. They're no different than if single family dwellings had been built there. And we certainly wouldn't suggest that that benefits an enterprise zone. So you've got a difference between the effect on the business of the area from hotel-motel and what we're running. So there is some distinction between hotel-motel vis-a-vis the effect on the surrounding zone. Well, can I respond to that, Your Honor? We would submit that it is a plain common-sense fact that if you look at the west side and the south side of Chicago and you ask how many tourists are going there to nice hotels, that's not where the business base is going to go. The business base is going to be from a solid populace that has money in their pocket that they can actually spend. Otherwise, what you're doing with the enterprise zone is purely saying, okay, we're going to wait until someone else creates that customer base. Someone else starts to gentrify that neighborhood and get people that do have money to spend on enterprises. Only then will we – and we see this again and again. That's what happened in West Belmont. That was a property at 1711 West Belmont, right in the middle of a lake view. Is that the kind of neighborhood that we're worried about? Not really. We are worried about areas of economic stagnation. And I just want to make one more point, which is that the Department has relied again and again on this idea that residential and commercial are distinct because under the property classifications of Cook County, they're assessed differently. They're treated differently. Well, when you actually look at Section 5 of their ruling and the citation to the ordinance, Section 1B9, all that is – and this is in the – I can give you the record site if you need it – all that is is a provision that is basically listed from the ordinance before it was revised. So if you ask yourself, okay, well, is there anything you can take from the idea that in the classification ordinance of Cook County there's a distinction? Well, in that same exact amendment that the Revenue Ruling 2 is purpose of the new classification, in part, there's several purposes, but one of them is creating a new class tax classification for rehabilitation of multifamily rental housing, which will increase or improve the stock of decent, safe, affordable housing for low- and moderate-income households. And the reason that's intertwined – and you can show that they believed that that was intertwined and critical as an element to support enterprises in the enterprise zone – was that it's not just Classes 2 and 5. In this case, if you're talking about what's called in the ordinance an area of severe economic stagnation, you're talking about Classes 8 and 9. Clearly, you're talking even about Class S. You're talking about classes where there's incentive commercial and there's low-income rental and they're treated exactly the same in terms of assessment. They're both given the favorable 10 percent assessment. This is not a distinction between – Mr. Belmont suggested that the exemption was intended to subsidize only commercial industrial projects rather than all forms of revitalization. Your argument is that this project helped revitalize the area, but the question is, is it actually a commercial use, or is it nothing more than renting a residential property and giving a couple of classes? It's not my contention that it's nothing more than a residential use that gives a couple of classes and revitalizes the neighborhood. That's absolutely not my position. My position is – What do you mean revitalizes the neighborhood? It's irrelevant. That – well, that's – it's not irrelevant. It's in the statute. Should I read you again the quote from Westall Mott, or do you want me to read it? No. It's on page 54 of the decision. I understand that. The exemption – I understand that. Well, when I'm done, you start. Intended to subsidize only commercial industrial projects rather than all forms of revitalization. That's what the quote is. And then if you go on further, it turns around and says residential condominiums – the Metro developers was developing and selling inside the area did not qualify for a tax exemption because they were using them to provide residential housing instead of for a commercial or industrial purpose. And if residential housing is not a commercial or industrial purpose, then you're not entitled to the exemption. The West Valmont case did not involve the ongoing commercial enterprise of either a real estate office that was renting and selling real estate, which would clearly come within the exception. All offices come within the exception. So the fact that we're renting real estate as a business certainly is a commercial activity. The fact that we're doing so on site in that residential development only means that 100 percent of that development is being used for our purpose of raising rents for profit. And the reason that this is not a slippery slope is that for every use that falls within the definition of commercial purposes – that is, the taxpayer is using it for a commercial purpose – you have to ask yourself, does it also serve the jobs? Well, here we have developments that create over 20 jobs, and they're permanent jobs. They're ongoing jobs in the community. But the ALJ, the Judge Prosser, just discounted these jobs by saying, well, the primary purpose was not to create jobs. Well, ask yourself, what business as a primary purpose wants to create jobs? They go out and say, I want to create jobs. That's what I want to do. No, they want to make money. And that's what my client also wanted to do. They wanted to make money. There's no doubt that that was their purpose. And I'm not relying on revitalization. I am relying on the nature of the business as falling within the plain, ordinary meaning. And I will again look at West Belmont, where they said that even if selling, not renting, but selling real estate was a commercial purpose within the dictionary definition, they would have to move beyond. They didn't want to just stay with the dictionary definition. They looked at the purpose of the exception, and they said West Belmont did not intend to set up a real estate office from which it would continue to sell townhomes indefinitely. So the fact that it's residential doesn't affect the selling real estate is covered by the exception, as long as you're doing it on an ongoing basis. We are renting apartments on an ongoing basis. That is our business. And again, it's limited not by a vague idea of revitalizing the community, but on the idea that it creates jobs, that it provides a very significant influx of federal funds into the neighborhood, into the residents. It helps the residents. It doesn't help necessarily just the outside investors. Here we're talking about something that goes to the essence of the enterprise zone, in that it creates jobs, in that it creates a populace, a customer base that can actually support enterprises. Thank you. Thank you. My name is Elizabeth Tischer, and I represent the city of Chicago. Taxpayers are not entitled to the enterprise zone exemption for their affordable housing developments for three main reasons. First, the plain language of the exemption clearly limits it to properties used primarily for commercial or industrial purposes, and the evidence demonstrates that taxpayers' properties are used almost exclusively for residential purposes. Second, taxpayers' argument that their properties are commercial merely because they generate income to taxpayers fails because it ignores how the property is actually being used. And finally, taxpayers cannot rely on the goals of the Illinois Enterprise Zone Act to overcome the plain language of the exemption. If we look at Metro, it says we're supposed to look at the intent of the buyer of the property. So the intent of the buyer of this property was to be in the business of renting apartments. And it was going to be a continuing business as opposed to a one-and-done on a townhouse or a one-and-done on a condo conversion. Do you see that as being different? Your Honors, in West Belmont and Metro developers, those cases were dealing with very different issues here. And taxpayers have cited that language from the beginning, that it's the intent of the buyer that matters, and taken it out of context. In West Belmont, the issue was whether the tax exemption applied to the use that the seller of the property had that use at the time of the transfer, even if the buyer of the property intended to extinguish that commercial use and put the property to a different use. So the question was whether the tax exemption applied to past use of the property or to the buyer's intended future use. So it was drawing that distinction, that temporal distinction. There was no discussion in West Belmont about whether just because a particular taxpayer is generating income on a property, that that is what controls in determining whether there's a commercial use. Well, I think your opponent is saying that because the buyer's intent was to rent real estate on this property, that that is a commercial use. I think that's what she's arguing. So is the rental of residential real estate property a commercial use within the meaning of the ordinance? No, Your Honor. And it's important that we look to, if we turn to the plain language of both the exemption and tax ruling number two, the transfer tax ruling number two, we have to look at the language that uses the term, the term is use, and that's the key word here, because it gets to what's actually true on the property. That's what you say it means. Not the theory is the way we should look at it. So tax rule number two specifies that the property must be used primarily for buying, selling, or otherwise providing goods and services. When tenants are living in the space, that is the primary use of the property, because the space is devoted to tenant living space. It's a residential use. That's the primary use. So there may possibly be I don't think they're hanging their head on buying and selling goods and services. They're hanging their head on otherwise providing goods and services, including use as hotel or motel. So it's otherwise providing goods and services, I guess. Right, Your Honor. So they're arguing that because the taxpayers here, the property owners are providing some services to the tenants, that that qualifies They can see that those services are not over 50 percent of the use. I think your argument is that the renting of residential real estate is, in fact, a commercial use within the meaning of the tax rule. Well, Your Honor, again, if we look to the tax ruling and we look to that language otherwise providing goods and services, it's important to understand what's actually occurring in the physical space of the property. So the tenants here, they're not buying, selling, or otherwise providing goods and services. What's occurring on the property, it's the use of the property. And we have to look at what's actually being used in the space. But the purchaser is using it to rent out units. And so isn't that the use of the property we're supposed to be looking at? And they're doing it for a profit. So, Your Honor, the use of the property must encompass what taxpayers are doing, what the tenants are doing. So the taxpayers, while they are generating income on the property, their use is also to provide housing. So that is also their use. The income that they generate from the collection of rent or any of the services that they provide that are a part of this leasing to tenants, those are not really incidental or secondary to the primary residential use. And if we look at the facts of this case, it's undisputed that around 87 to 100 percent of the square footage of taxpayers' properties is devoted exclusively to living space for tenants. Even if we could categorize the income from the rents or these other services as commercial in nature, that still would not amount to more than 50 percent of the use of this property. Well, I understand what you're saying. But I want to look at Section 5 of the Transfer Tax Ruling. Section 5 defines property primarily used for commercial purposes. It's a definition. And what does it define it as? Not what the property primarily used for commercial purposes. It's property primarily used for the buying and selling of goods and services. So the question becomes, is anything that that taxpayer is doing, does that constitute the selling of goods or services within the meaning of the ruling? And we understand that more than 50 percent of the property must be used for that commercial purpose. So we've got, I believe, a concession that not more than 50 percent of the property is used for whatever classes they provide. So the question becomes, is the renting of apartment units, does that fall within the definition of selling goods or services? No, Your Honor. The buying or selling of goods and services has to be an activity that's taking place in the space. So we have to look to how the tenants are actually occupying that space. And if we look to the Cook County Real Estate Classification Ordinance, because this is consistent with how properties are classified for tax purposes, and in the tax ruling, the commercial purpose from the Cook County Tax Ordinance. If we look there, there's a separate definition of real estate used for residential purposes, and that is defined as any improvement or portion thereof occupied solely as a dwelling unit. There it draws no distinction. Your Honor, I think we're supposed to look to the purpose that the owner of the real estate is putting the property to, not the purpose his tenants are occupying. Now, what is the purpose that your opponents are putting this property to? The purpose is renting to residential occupants. That's the purpose they're putting the property to, is that not correct? Yes, Your Honor, their purpose is... Is that the sale of goods or services? No, Your Honor. And why not? Because they're contracting, essentially contracting with tenants for long-term leases to permanent residents. But we know it's not the sale of goods. So is it the sale of a service? Is the renting of residential property to an individual the sale of a service? The renting of a property, it's not... Even if we were to categorize that as providing of a good and service, it still wouldn't... We still can't extinguish the way that the property is actually being used by the tenants here. So taxpayers' purpose, yes, it's to provide housing. That's the residential use. That's the use here. It's housing. Is that providing service? The providing of services there is secondary to the fact that they're operating housing. It's a residential use. Forget about the English classes. That's a hearing. The actual rental of the residential property, is that the providing of a service? I own an apartment. I rent it to you. Is that me providing you with a service? That would not... Under the terms of this ruling, that would not specifically be the providing of a service. And if... I just want to draw this Court's attention back to West Belmont and the discussion there regarding the real estate, sale of real estate that was discussed in West Belmont. And that was the second point. After they addressed the past versus future use, they did address this idea that perhaps a real estate office that was set up for the long-term sale of real estate, that that would perhaps be a commercial purpose. So I want to make a couple of points on that. So to begin, that was a point that the Court made in dicta. So there were no facts in that case that the taxpayers were establishing any sort of long-term real estate sales office. But there could very well be a scenario where there's just a single office space, and they're devoted to the sale of real estate, and that that is 50 percent of... and that the property is occupied by more than 50 percent by that sales office, and that that's the sale of real estate. But this is a different scenario. This is where the taxpayers have not established a single office space on the property where they're making sales of real estate or operating a leasing agency. What they're doing here is their intent was to operate affordable housing, multifamily housing, and the contracts that they have with these tenants for collection of rent, for services that are provided, that's just what they're doing. If we assume that leasing or renting property is a service in order... I'm just assuming. I know you're not saying that. The action or performing that service needs to occupy more than 50 percent of each of these properties. So the rental office needs to be bigger than 50 percent. Correct me if I'm wrong, but if we look at the tax relief and the 50 percent threshold, it's a requirement that the space be used for the commercial purpose. So there could be an office taking up 100 percent of a particular piece of property. But the fact that there are services provided here to the tenants, it doesn't turn the property commercial merely because these are provided to all of the tenants on the property because the property is actually being used as living space. And I would like to return your attention to that definition of residential use in the Cook County Ordinance, defining it as an improvement or any portion thereof occupied solely as a dwelling unit. And that definition draws no distinction between whether a property is owner-occupied or whether the property is a rental unit. And that is significant because it shows that a property is characterized as a residential property when it is being occupied by tenants as their permanent residence. And it specifies, if we look at that next two, it is used primarily as a residential purpose and also used primarily as a commercial purpose. The residential, in this case, it's almost entirely dwelling units for the tenants. Let me ask you a question. I can accept the argument that if a property was used exclusively as a rental office for the purpose of leasing real estate, then it's being used for a service. In this case, more than 50 percent is not. In this case, it's being used, the use of the property is for residential purposes for profit. How do you differentiate the use of this property, vis-à-vis being a service or not being a service, from a hotel or a motel? The distinction between hotels and motels and residential properties is that the best of hotels and motels, they're not permanent residents. They're not occupying those spaces as their domicile. And that's actually specified within the definition of hotel within the Cook County Tax Specification Ordinance. It excludes from the definition of hotel residences or properties that are occupied as permanent residences and domiciles by the tenants. So that's the distinction, because the guests, in the case of a hotel and motel, they're essentially consumers of the rooms and the services provided by the hotels. They're not living there. They may, as your owner put it, come for a couple of nights, take advantage of the space that occupies their individual space. And that's why there is a distinction drawn in the tax code and, in this case, per the language of the exemption, between those types of properties. What would you do in a place like the Hotel Belmont where people actually live there? And it's a hotel. They live there. That's where they live. In that situation, if that was considered a permanent residence, then that would likely be categorized as a residential property. And specifically under the definition of hotel, if it excludes lodging used as a permanent residence from that definition, then that perhaps would be categorized as a residential use. But here we're looking at hotels and motels in their traditional sense of bringing in out-of-town guests to purchase rooms, to purchase and take advantage of the goods and services provided by the hotel. And in this case, while taxpayers do provide some services to their tenants that are incidental to the leasing of that space, and that is typical of a lot of multifamily housing, or even in condominium spaces, that the property owners or the associations provide services to the tenants, those are just incidental to the fact that the primary use here is still, as a residential property, it's a permanent residence for these individuals. Just to make one final point regarding the purpose of the taxpayer's argument regarding the purpose of the Illinois Enterprise Zone Act. Taxpayers argue that their properties are consistent with the goals of the act to stimulate neighborhood revitalization. But as Your Honor pointed out, this Court already rejected that argument in West Belmont by explaining that the exemption here is limited to subsidizing projects that are commercial or industrial rather than all forms of revitalization. So even if the terms of the act or the purpose of the act were to encompass these other forms of revitalization, such as affordable housing, the city is absolutely permitted to draft a narrower exemption just for the specific purposes of commercial and industrial growth. And the goals of the act, no matter how broad, cannot be used to overcome that claim language, which is clearly limited to commercial or industrial projects, makes no mention of We have a little difficulty with the question of our standard of review. What deference do we owe to the Department of Real Estate Property Tax Transfer Ruling? What deference do we owe and why? The tax transfer ruling gets deference where the language of the exemption itself is unambiguous, is ambiguous, and the tax ruling is addressing that ambiguous gap, then it gets deference. If we understand that the code itself really says that the real property used primarily for commercial and industrial purposes, you would have to make the argument to give deference to the tax ruling that that's an ambiguous phrase and therefore we would give deference to them. If it's unambiguous, we give them no deference and interpret it de novo. So you think it's ambiguous? So I want to clarify, Your Honor, that the taxpayers in this case have not challenged the tax ruling itself as being ambiguous, I'm sorry, as being unenforceable in any way. Well, it's not unenforceable. It's a question of do we give it deference? Because the taxpayers have applied for an exemption not under the tax ruling, they've applied for an exemption under Section 3-33-060L of the municipal code. So the question is are they entitled to it under the municipal code? Your argument is, well, the tax ruling defines commercial and industrial purposes and therefore they're not using it for that purpose, they get no My question is, is the phrase primarily used for commercial and industrial purposes as used in the municipal code itself an ambiguous phrase or is it unambiguous? We would argue that the language in the exemption itself is unambiguous and that it still requires a commercial use and that this in particular is not But the problem is the tax ruling defines commercial use. And so for us to give deference to the tax ruling, we would necessarily have to find that the phrase commercial or industrial purposes as contained within the municipal code is an ambiguous phrase and therefore give deference to the body charged with the interpretation of the phrase for its definition. Yes, Your Honor. Our argument is that the language of the exemption itself is sufficient to exclude taxpayers' properties because they're not being used for commercial purposes and again it's the use of the space. The tax ruling Wait a minute. If I rent property that I own to a third person for money, what's the contention that I'm not engaged in a commercial purpose? I mean it's to make money. It's not industrial but it's certainly commercial. Yes, Your Honor. And I just want to return to the word being used that we're looking at the use of the property and the exemption does not specify that and of course the city could have stated that they want to subsidize projects that generate income to the taxpayer or the property owner or they want to subsidize projects that produce X number of jobs. There are a lot of ways they could have written this exemption. The question becomes is the use of the property for profit commercial? Does that equal commercial just because I use it for profit? In the language of the exemption then it's not if the actual use, the activity taking place on the property is not itself commercial. If it involves permanent residence for tenants. It's the use that the owner, the party that's applying for the exemption, is placed on the property. And the use they provide it, they use it for, is to rent it out. And, Your Honor, I just. For residential purpose. But even if we do have some, even if we can argue that there's ambiguity in what commercial use means in the exemption, then we do have the tax ruling that specifies, clarifies what commercial use means. There's no question. If the phrase commercial and industrial purposes is ambiguous, then we must give deference to the tax ruling. And the tax ruling defines property use for commercial use and that is property use for the buying or selling of goods and services. Yes, Your Honor. There's no question. If it's ambiguous, we've got to give deference and the ruling provides the definition. But if it's not ambiguous, then we don't look to the tax ruling. We just interpret it as written. Correct, Your Honor. And so we would argue, we think the term use in the exemption helps us understand how the property is actually, helps us understand that it's the space that we're looking at in the property. What constitutes, so I just want to clarify that we're looking at two different words here. So we're looking at use. Use is consistent among the language in the exemption itself and the language of the tax ruling. So use implies that, or it means that we must look at the activity going on in the space. What constitutes a commercial purpose? The word commercial was clarified in the tax ruling. So there we're looking at the commercial purpose. The word commercial in the exemption could be ambiguous. Didn't West Belmont answer this question about whether the ordinance was ambiguous? I mean, they answered it explicitly that the word used was ambiguous. But I think they also looked to the ruling in determining a definition for commercial. So is it implicit in that that they found it vague? Yes, Your Honor. And specifically the issue in West Belmont was a little bit different. Looking at future or past use. But it was still use. So here we have the issue being what is use in the physical sense. And whether we're looking at the exemption itself or whether we're looking at the tax ruling, use implies that we have to look at the physical space. We look at the ruling to understand what commercial, specifically what commercial is. Whose use? Whose use? The owner's use or the tenant's use do we look to? Well, that's what is important about looking at the tax ruling to clarify whether it's the buying or selling of goods and services and that that has to be within the physical space. We're looking at the activity that's taking place on the property. You wouldn't suggest, if property was being used for the sale of a commodity, then in that particular case there's no problem understanding that it's a sale of goods and therefore there's an exemption. What would happen if the property were rented out to a tenant that used it for the sale of goods? In that circumstance then... Is that a commercial use within the meaning of the... Yes, Your Honor, because in that circumstance the space of the property, the physical space of the property would be used for buying, selling of goods and services. Also, you're looking at the use that's placed in the property by the tenant as opposed to the use of the property by the owner. It's not necessarily that it's opposed to the use. The use of the taxpayer isn't just to generate income as a... No, the taxpayer rents this property out and his use is as a rental unit. The tenant uses it to sell goods. Now the question becomes, does that fall within the definition in the tax ruling, assuming that the ordinance is ambiguous? So are we looking to the use that the tenant is putting the property to? In this case it's residential living space. Or do we look to the use that the owner puts the property to, i.e. renting apartments? In this case we would look to the use primarily that the tenants are... Well, the use that the tenants are putting it to is how the space itself is being used. So we can also say that the taxpayers are using the space for that purpose because their intent, they're operating an affordable housing development. They might have another use for themselves, generating income to themselves, but that is secondary or incidental to this primary use of the property being rented out as a permanent residence to these individuals. And I just want to... So your argument is still to do with finances. This property is being used for residential purposes. It's not being used for commercial purposes. Yes, our argument has always been that we have to look at what's happening in the space. And that's where the tax ruling... The exemption and the tax ruling both contain the word use, which is very clear that we have to look at the space. The tax ruling specifies what type of activity in that space constitutes commercial, the buying, selling of goods and services. Residential housing, when it's occupied by tenants and it's their permanent residence, their domicile, that is not the buying or selling of goods and services. And I just want to make one final point that it's important to remember that these tax ordinances are... Tax exemptions are very strictly construed in favor of taxation. So if there's any debatable issue or any doubt, that must be resolved in favor of taxation. And additionally, taxpayers bear a very heavy burden of proving by clearing convincing evidence they are entitled to the exemption, and they have not done so here. If there are no further questions, I ask this Court to affirm the judgment of the Circuit Court. Thank you. Thank you. I am trying to keep up but feel as if I am getting whiplash with the different positions that the Department is arguing. For years I've been working on this case, and the Department's position had always been that West Belmont was the case to look at and that the uses, if anything, of the taxpayer was just a red herring. They even used that in one of their briefs. That wasn't a relevant issue. Whose use mattered? Then in the appellate brief they moved to the idea that when you lease enterprise zone property, the use that matters is the tenant's use. Okay. Well, we looked at that. That doesn't work clearly because there was a question about whether a service is being provided in residential housing, and the answer is no, it's just a place to stay. However, the tax declaration that the Department uses to figure out whether, in fact, you qualify, includes parking garages, offices, hotels, and motels. Those are not places where the primary use, more than 50% of the physical property, is for anything other than letting out space on a temporary basis. That's exactly the same use. Now they're moving from the lessee's use to use of the property somehow, how it's being used. Well, let's think about another hypothetical where the taxpayer is renting out an office to a charitable organization. That's a not-profit. They are not using it for a commercial purpose, right? But the taxpayer clearly is renting out an office to a charitable organization. I would like to look in your argument to the use that the taxpayer is placing to the property, not the use that the tenant is placing. That is absolutely correct, and I think that's the only way to look at this that is consistent with the Department's own application of the exemption. The Department does not look at the lessee's use whenever the property is being leased. They just don't do that. They look at the taxpayer's use, and they include offices regardless of what the use is of the tenants, regardless of whether the tenants also have a commercial space. As to the purposes of the enterprise zone, I didn't hear any response or attempt to address my argument that in the Cook County Ordinance itself, there is the assumption that a customer base within that low-income and moderate-income population necessarily occupying enterprise zones is necessary, is absolutely necessary for any type of economic growth. I would also say that when we're talking about deference to Ruling No. 2 and ambiguity with respect to the statute itself, I would agree that in West Belmont they found not only the word use but also the word commercial to be ambiguous in the statute. I would, however, challenge the idea that the revenue ruling is a specific definition that excludes residential. We argue that it is not. It is clearly not, not only because it says otherwise providing goods and services including, it doesn't say limited to hotels, it says including, even though declaration has an other box. So there's clearly an idea that there are other intended uses that can be covered by the enterprise zone exception other than a situation where if you are leasing it, the lessee has to use it for a commercial purpose or that the person using the property has to use it for a commercial purpose. And then they make a fourth argument that somehow the use of the taxpayer and the tenants is the same. I just, we're not living in those properties. So I don't believe that works. So I would just say that even if the Court were to find that it did need to grant deference to that Ruling No. 2, even that Ruling No. 2 doesn't use the word residential. All they can do to find that residential exclusion in the affordable housing context is to go back to another jurisdictional body, another entity, Cook County, to their classification codes. And their classification classes there, rather, actually provide that in distressed economic areas there's the same treatment for affordable rental housing and for incentive commercial. With that, I will close unless there's any other questions and ask the Court to reverse. Thank you. Thank you, Counsel. Thank you both. The case will be taken under advisement.